IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VILLAGE RESORTS, INC., et al., | ) | Case No. 11-50965 |
| | ) | (Jointly Administered) |
| Debtors. | ) | Hon. Jack B. Schmetterer |

**ORDER, PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004, (i) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTORS' PROPERTY, (ii) APPROVING NOTICE PROCEDURES REGARDING THE SALE AND (iii) SCHEDULING A HEARING DATE TO CONSIDER THE SALE**

This matter having come before the Court on the Motion of Village Resorts, Inc. ("VRI"), KM Lincoln, LLC ("KM Lincoln") and KM Touhy, LLC ("KM Touhy") (each a "Debtor" and collectively, the "Debtors") for the entry of orders (I): (A) approving bidding procedures (the "Bid Procedures") in connection with the Debtors' sale (the "Sale") of several parcels of real property located at 4500 West Touhy Avenue, 4560 West Touhy Avenue, and 7350 North Lincoln in Lincolnwood, Illinois free and clear of all liens, claims, encumbrances and interests; (B) approving the form and manner of notice of the Sale and proposed bidding procedures, and (C) setting the hearing date in connection with such sale; and (II): (A) authorizing and approving the Sale to the purchaser submitting the highest and best offer, (B) waiving the fourteen (14) day stay provided by Bankruptcy Rule 6004(h), and (C) granting related relief; the Court having reviewed the Motion and the Court determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; it appearing that notice of the Motion was good and sufficient under the particular

circumstances and that no other due deliberation thereon is necessary; and good and sufficient cause appearing therefore, IT IS HEREBY FOUND THAT:

A.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363 and 1123(a)(5)(D) and Fed. R. Bankr. P. 2002 and 6004. Venue of the Debtors' chapter 11 cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The Debtors have articulated good and sufficient reasons for approving (1) the Bid Procedures, and (2) the form and manner of notice of the Bid Procedures and the Sale.

C.  The Bid Procedures are reasonable and appropriate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.  The Bid Procedures attached hereto as Exhibit 1 are approved and fully incorporated into this Order. The Debtors are authorized and directed to act in accordance therewith in connection with the Auction and Sale of the Properties described in Exhibit 1 attached hereto, provided that no minimum bid shall be advertised or required as a condition to participate in the Auction, unless otherwise ordered by the Court.

2.  Within five (5) business days after the entry of this Order, or as soon thereafter as practicable (the "Notice Date"), the Debtors shall serve a copy of this Order and the Bid Procedures upon (a) all entities known to have expressed an

interest in the Property; (b) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Property; (c) the Office of the United States Trustee; (d) all creditors listed in the Debtor's Schedules; and (e) those parties who requested notice pursuant to Bankruptcy Rule 2002. Such notice shall be sufficient and proper notice of the sale with respect to interested parties.

3.    An auction at which time only Qualified Bidders that have submitted Qualified Bids are eligible to participate (the "Auction") shall be held on or before May 15, 2012, the exact date, time and location to be designated by the Debtors in writing to be filed with the Court.

4.    Objections to all relief requested in the Sale Motion and the Sale itself must be in writing and filed with and submitted to the Court and served upon Debtor's counsel by 4:00 p.m. (prevailing Central time) on May 18, 2012.

5.    A final hearing to determine the Winning Bidder and to approve the sale of the Assets to the Winning Bidder pursuant to a sale agreement shall be held on May 22, 2012 at 11:30 a.m. (prevailing Central time) in courtroom 682 at the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn St., Chicago, Illinois.

6.    Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: March 9, 2012

_____
UNITED STATES BANKRUPTCY JUDGE

*Prepared by*:
Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC
53 W. Jackson Blvd., Suite 1115
Chicago, Illinois 60604
Tel.:(312) 588-5000
Fax: (312) 427-5709

# EXHIBIT 1

# BID PROCEDURES

{10262-001 MSC A0313691.DOC 4}

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| VILLAGE RESORTS, INC., et al., ) | Case No. 11-50965 |
| ) | (Jointly Administered) |
| Debtors. ) | Hon. Jack B. Schmetterer |

## BID PROCEDURES

Set forth below are the bid procedures (the "Bid Procedures") to be employed with respect to the proposed disposition of the real property and personal property located at 4500 West Touhy Avenue, 4560 West Touhy Avenue, and 7350 North Lincoln in Lincolnwood, Illinois (collectively, the "Property") owned by Village Resorts, Inc. ("VRI"), KM Lincoln, LLC ("KM Lincoln") and KM Touhy, LLC ("KM Touhy") (each a "Debtor" and collectively, the "Debtors).

These Bid Procedures were approved and authorized by a Bankruptcy Court order (the "Bid Procedures Order") in the chapter 11 cases of the Debtors. VRI's case was commenced on December 21, 2011, and KM Lincoln and KM Touhy's cases were commenced on January 23, 2012 (collectively, the "Bankruptcy Cases").

### Sale Motion

On February 17, 2012, the Debtors filed in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") a motion (the "Sale Motion") for orders, and on March __, 2012, the Bankruptcy Court entered its Order (I): (A) approving bidding procedures in connection with the Debtors' sale of several parcels of real property located at 4500 West Touhy Avenue ("Parcel A"), 4560 West Touhy Avenue ("Parcel B"), and 7350 North Lincoln Avenue ("Parcel C," and together with Parcel A and Parcel B, the "Property") in Lincolnwood, Illinois free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens") subject to the Village of Lincolnwood's Demolition Lien; (B) approving the form and manner of notice of the sale and proposed bidding procedures, and (C) setting the hearing date in connection with such sale; and (II): (A) authorizing and approving the sale to the purchaser submitting the highest and best offer, (B) waiving the fourteen (14) day stay provided by Bankruptcy Rule 6004(h), and (C) granting related relief.

The Debtors provide these Bid Procedures for use by Potential Bidders (as defined) and, as necessary, qualifying for and participating in the Auction. The Debtors seek to enter into one or more transactions with one or more Qualified Bidders, so long as the individual bid for all of the Property by a Qualified Bidder or the bids for less than all of the Property by two or more Qualified Bidders, in combination, represent the highest and otherwise best offer for all or substantially all of the Property.

The Debtors and those secured creditors that do not intend to bid (the "Consultation Parties"), including the HEREIU Welfare Fund and the Retirement Plan of the UNITE HERE National Retirement Fund (collectively, the "Funds") and their advisors, shall regularly consult with each other concerning the Debtors' contact and correspondence with any person or entity wishing to bid on any of the Property (each, a "Potential Bidder"). The Debtors shall reasonably provide the Consultation Parties with copies of all documents, including, but not limited to, all Written Offers and documents related thereto, Qualified Bids, and expressions of interest, received by the Debtors from the Potential Bidders, regardless of provisions in such documents to the contrary, within two (2) business days of receipt of any such documents by the Debtors. The Consultation Parties shall maintain the confidentiality of any such documents and information and may not share such documents or information with any other parties.

A "Qualified Bidder" is a Potential Bidder who meets the requirements set forth in Section (b) below by the Bid Deadline.

**Auction**

Racebrook Marketing Concepts, LLC d/b/a Sheldon Good and Company ("Sheldon Good" or the "Auctioneer") shall conduct an auction (the "Auction") with respect to the Property and shall provide all Qualified Bidders the opportunity to participate in the Auction. The Auction shall commence on or before **May 15, 2012**, the exact date, time and location to be designated by the Debtors in writing and filed with the Court.

Only a Qualified Bidder is eligible to participate at the Auction. During the Auction, bidding shall begin initially with the highest or otherwise best Qualified Bid as announced by the Auctioneer, and subsequently continue in increments. The Debtors may continue the Auction if they determine that such continuance is in the best interests of their bankruptcy estates.

Upon conclusion of the bidding, the Auction may be closed, and the Debtors shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed transaction(s), and (ii) identify the highest, best or otherwise financially superior offer(s) for the Property (the "High Bid Price" or "Winning Bid(s)") and the entity or entities submitting such Winning Bid(s), (the "Winning Bidder(s)"), which highest, best or otherwise financially superior offer(s) will provide the greatest amount of net value to the Debtors, and advise the Qualified Bidders of such determination.

**The Bidding Process**

(a) **"AS IS, WHERE IS":** All bids shall be to purchase the Property (or a portion of the Property) on an "AS IS, WHERE IS" free and clear of all Liens, whether known or unknown, choate or inchoate, pursuant to Section 363(f) of the Bankruptcy Code, except for accrued but not yet payable real estate taxes, restrictive covenants of record identified in the Debtors' title commitment such as utility easements and governmental unit rights of way, and the demolition lien of the Village of Lincolnwood (the "Village") respecting Parcel A. The Debtors make no representations

or warranties whatsoever otherwise concerning the condition of the Property.

(b) **Qualification to Bid:** Except as provided in paragraphs (c) and (q), to qualify to participate in the Auction, by May 15, 2012, a bidder must have (i) via wire or cashier's check transferred to the Debtors' Chicago Title and Trust Company-VRI Sale Escrow account a bidding deposit (the "Deposit") in the amount of $500,000 with respect to the Property; (ii) inspected or waived inspection of the Property; (iii) purchased or received a bidder's information Packet (as defined below); (iv) stated in writing that the Qualified Bidder is prepared to enter into a legally binding purchase and sale agreement; (v) submitted to the Debtors a clean, duly executed and binding purchase agreement in a form acceptable to the Debtors in their reasonable discretion, together with a blacklined copy marked to show all changes from the form Purchase Agreement yet to be filed with the Court; (vi) delivered to the Debtors financial information and credit-quality support or enhancement that demonstrate, in the Debtors' reasonable discretion, in consultation with the Consultation Parties, the financial capability of the Potential Bidder to consummate the proposed transaction for the desired Property; and (vii) stated in writing that the bidder will: (a) consummate the proposed transaction by no later than June 1, 2012 (the "Closing Deadline"); and (b) in the event that the bidder is selected as a Backup Bidder (as defined below), keep its offer to purchase the Property open until the earlier to occur of (I) two (2) business days after the closing of the transaction(s) by which all of the Property that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (II) June 3, 2012 (the "Backup Bid Closing Deadline"); (vii) acknowledged and represented in writing that such bidder: (a) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its bid; (b) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or the Auction other than as provided in the Purchase Agreement and (c) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid; (viii) to the Debtors' satisfaction fully disclosed (a) the identity of each entity that will be bidding for the Property or otherwise participating in connection with such bid, (b) the terms of any such participation, and (c) if an entity has been formed for the purpose of acquiring some, or all, of the Property, the parties that will bear liability for any breach by such entity, and the financial capacity of such parties to satisfy such liability; provided however that the Pre-Qualified Parties shall be excused from this requirement; (ix) stated in writing that any bids to be made by such bidder shall be irrevocable until (a) the closing of the

transaction, if such Qualified Bidder is designated as a Successful Bidder and (b) the earlier to occur of (b)(i) and (b)(ii) as set forth in paragraph 3 above, if such Qualified Bidder is designated as the Backup Bidder. The Debtors shall consult with the Consultation Parties regarding their determination of the status of a Potential Bidder as a Qualified Bidder.

(c) **Qualified Bidders:** Any bidder that qualifies will be a "Qualified Bidder." Only Qualified Bidders will be permitted to be present at the Auction and participate in bidding for the Property at the Auction. The Auctioneer and the Debtors shall reasonably determine in good faith, whether any bidder is a Qualified Bidder.

With respect to Parcel A, North Capital Group LLC ("North Capital") and the Funds will be entitled to Credit Bid their lien claims (each such bid shall be referred to as a "Credit Bid"). North Capital and the Funds are deemed Qualified Bidders and have the right, but not the obligation, to Credit Bid the value of their liens on Parcel A, without complying with the qualification requirements noted above, provided that if North Capital or the Funds are the Winning Bidder, they shall deposit cash with the Debtors at closing sufficient to pay all senior liens (excluding the Village of Lincolnwood's Demolition Lien) and all reasonable and necessary costs and expenses of preserving, or disposing of, the Property ("Section 506(c) Expenses"). Prior to the Auction, the Debtors shall file a budget set forth the maximum amount of Section 506(c) Expenses that the Winning Bidder would be required to fund a closing.

With respect to Parcels B and C, Foster Bank or assignees will be entitled to Credit Bid its lien claims. Foster Bank is deemed a Qualified Bidder and has the right but not the obligation to Credit Bid the value of its liens on Parcels B and C, without complying with the qualification requirements noted above, provided that Foster Bank shall deposit cash with the Debtors at closing sufficient to pay all senior liens, if any, on Parcels B and C and Foster Bank's proportionate share of Section 506(c) Expenses.

(d) **Breach of the Agreement of Sale:** Any Deposit will be forfeited as liquidated damages and the Winning Bidder held liable for compensatory damages if the Winning Bidder fails to close by reason of its breach of the Agreement of Sale.

(e) **No Contingent Bids:** Bids may not be subject to any contingencies, including but not limited to financing, due diligence, zoning, environmental or any other contingency, except the entry of an order of the Bankruptcy Court approving the sale pursuant to section 363(b) of the Bankruptcy Code.

(f) **The Auction Format:** As to Qualified Bidders, all bidding is open and public. To bid during the Auction, a Qualified Bidder need only raise its hand, shout out its bid or instruct an auctioneer's bidder assistant to call out a bid on behalf of the Qualified Bidder.

(g) **Bidding at the Auction:**

   i. After the initial opening bid, all subsequent competing bids shall be in increments at the direction and discretion of the Auctioneer. No bid shall be of the same amount as any existing bid.

   ii. Auctioneer reserves the right to reopen the bidding and re-bid the Property, in the event of a bidding dispute occurring at the Auction.

   iii. Auctioneer reserves the right to determine with whom the bid is placed in the event of a tie or dispute.

   iv. Oral and written announcements made by the Auctioneer before the commencement of the bidding take precedent over any previously distributed materials.

   v. Bids made after the bidding is concluded at the Auction may not be considered by the Debtors.

(h) **Additional Requirements of the Winning Bidder:** The Winning Bidder will also be required to sign the bidder's card upon the conclusion of bidding acknowledging the purchase. The Winning Bidder shall immediately execute the Agreement of Sale. The Deposit MUST be increased to 10% of the Total Purchase Price by wire transfer or other deposit to the VRI Sale Escrow within two (2) business days following the Auction. The Winning Bidder must sign a statement that the Winning Bidder accepts the Property in "as is" condition. If the purchaser is a corporation or partnership or trust, there are additional bidding requirements and the Winning Bidder should contact the Auctioneer to discuss these requirements in advance of the Auction. In the sole discretion of the Debtors, the Auctioneer may qualify the next highest and best Winning Bidder (the "Next Successful Bidder") in accordance with this provision and the Agreement of Sale to close the sale in the event the Winning Bidder defaults under the Agreement of Sale.

(i) **Appearance at Auction:** All Qualified Bidder(s) must appear in person or via telephone or through a duly authorized representative or by submitting a bid prior to the Auction to be entered into the bidding at the Auction.

(j) **Jurisdiction of Bankruptcy Court:** The Auctioneer shall conduct the Sale for and as directed by the Bankruptcy Court for the benefit of the

Debtors and their estates. The Auctioneer, all bidders and their brokers or representatives are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to any dispute relating to all matters related to the Auction and all terms and conditions of the transfer of the Property.

(k) **Winning Bidder Default:** If any Winning Bidder fails to close the sale contemplated herein, it will be liable for and forfeit any Deposit and, in the sole discretion of the Debtors, the Debtors may close the sale with the Next Successful Bidder in accordance with the Agreement of Sale.

(l) **Closing:** The closing of the Sale pursuant to the Auction (the "Closing") shall take place in accordance with the terms of the Agreement of Sale, but shall occur no later than June 1, 2012, unless otherwise extended by agreement of the parties or order of the Bankruptcy Court.

(m) **Bankruptcy Court Approval:** The Sale of the Property contemplated herein shall be subject to the entry of an order, or orders as the case may be, by the Court: (a) approving the Sale and transfer of the Property; and (b) containing a finding that the Winning Bidder is a good faith Purchaser, pursuant to section 363(m) of the Bankruptcy Code.

(n) **Absolute Offerings:** The Final High Bids that are offered on the Property are absolute, without reserve, and will be accepted at the time and place of the Auction, subject only to the approval of the Bankruptcy Court.

(o) **The Sale Hearing:** A hearing to confirm the results of the Auction, if any, and/or to approve the Sale of the Property, will be held before Bankruptcy Court, in courtroom 682 at the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, at 219 S. Dearborn St., on **May 22, 2012 at 11:30 a.m.** (the "Sale Hearing") or as soon thereafter as practically possible.

(p) **Modifications:** The Debtors reserve the right to: (i) impose additional or different reasonable terms and conditions at or before the Auction, (ii) extend the deadlines set forth in the Sale Procedures and/or adjourn the Auction and/or the Sale Hearing, without further notice, and (iii) the Debtors may at any time, in their sole discretion, reject any and all bids that are not from Qualified Bidders.

(q) **Credit Bid:** North Capital, the Funds, and Foster Bank (the "Pre-Qualified Parties") shall be permitted to Credit Bid pursuant to section 363(k) of the Bankruptcy Code and subparagraph (c) above. The Pre-Qualified Parties are deemed Qualified Bidders and except as set forth in subparagraph (c) shall be exempt from the qualification requirements, as set forth above, so long as such Credit Bid otherwise constitutes a

qualified bid. If the Winning Bidder has submitted a Credit Bid, the Winning Bidder shall deposit cash in an amount equal to all senior liens (exclusive of the Village and Section 506(c) Expenses and any excess between the aggregate Winning Bid and the pro rata amount of the Credit Bid.

(r) **Buyer's Premium:** Except with respect to a Credit Bid or a cash bid by a Pre-Qualified Party, in addition to the final High Bid Price the Winning Bidder will pay a 3.5% (three and one half percent) premium (the "Buyer's Premium"). The Buyer's Premium shall be added to the Final High Bid Price and inserted in the Agreement of Sale to determine the total purchase price (the "Total Purchase Price"). Auctioneer shall retain the entire Buyer's Premium as its commission. If the purchase agreement does not contain a stated Buyer's Premium, then Auctioneer's commission shall remain unaffected and be equal to 3.5% of the High Bid Price.

**With respect to bids by any Pre-Qualified Party**, in addition to the final High Bid Price the Winning Bidder will pay a 0.5% (one-half percent) Buyer's Premium on the Credit Bid portion of its bid and a 1.5% (one and one-half percent) Buyer's Premium on the cash portion of its bid, if any. The Buyer's Premium shall be added to the Final High Bid Price and inserted in the Agreement of Sale to determine the Total Purchase Price. The Buyer's Premium to be charged to and paid by any Pre-Qualified Party shall constitute Section 506 Expenses.

(s) **Realtor®/Broker Participation Invited:** A referral fee of 1% (one percent) of the High Bid Price, excluding the Buyer's Premium (the "Referral Fee"), will be paid by the Auctioneer to the real estate broker acting as a "Buyer Broker" for a cash purchaser whose client pays cash for and closes on the Property. For the avoidance of doubt, any agent for North Capital that submits any portion of a cash bid for the Property should not be entitled to a "Referral Fee." To qualify for the Referral Fee, the real estate agent must: (a) be a licensed real estate broker in the state in which the Property is located who will abide by the National Association of Realtors® Code of Ethics; (b) register the client by certified mail, return receipt requested, on company stationery, which must be signed by both the broker and the client and confirm the Buyer Broker arrangement, with **Sheldon Good and Company, A Racebrook Portfolio Company, 150 North Wacker Dr., Suite 2222, Chicago, IL 60606, Attention: Project Manager**, received no later than three (3) business days prior to the auction date; (c) ensure that the registration letter is received before any inspection of the property by the client; (d) sign in and inspect the Property with the client during a scheduled site inspection; and (e) attend the Auction with the client and bid with or for the client. All registrations accepted will be acknowledged; each acknowledged broker must bring his or her registration acknowledgment to the on-site inspection to the Auction for registration verification purposes. A complete registration file

on all prospects will be maintained. No REALTOR®/Broker will be recognized for a client who has previously contacted or been contacted by the Debtors or their representative or the Auctioneer. No Referral Fees will be paid by the Auctioneer if the broker, the broker's agents or a member of the broker's immediate family is participating in the purchase of the Property or is an employee or partner of the Purchaser. An affidavit will be required certifying that the agent is serving only as a broker and not as a principal. There can be NO EXCEPTIONS to this procedure and no oral registrations will be accepted. Realtors®//Brokers are hereby notified that the Debtors have provided no commission arrangement for the sale of the Property in this offering. If a broker has not met all of these requirements, no Referral Fee will be paid to the broker, even if the broker's client purchases the Property.

(t)  **Documents Available:** A bidder's information packet (the "Packet") has been assembled and may include such items as detailed Auction information, property description, legal description, the Agreement of Sale, preliminary title examination report, operating costs, detailed property information, existing environmental and other third party reports, real estate tax bill, local zoning information, local market information, existing survey, terms of sale, bidder's affidavit and other applicable information. The Packet is available for purchase via telephone, fax order or mail from Sheldon Good, at the on-site inspection. The purchase of a Packet is required prior to registering to bid at the Auction. The Debtors, the Debtors' agents, and Auctioneer shall not be liable for any inaccuracy contained in any reports furnished to buyers, including those originating from third party experts.

(u)  **Attorney Review Recommended:** All information contained in auction-related material, such as the Packet, should be carefully reviewed by a bidder's attorney prior to the Auction and is subject to and may be superseded by the Agreement of Sale and announcements made from the podium prior to the commencement of bidding.

(v)  **Conduct of the Auction:** Neither the Debtors, the Debtors' agents or principals, nor the Auctioneer, are permitted to bid at the Auction. Conduct of the Auction and increments of bidding are at the direction and discretion of the Auctioneer. The Debtors and the Auctioneer reserve the right to refuse admittance to or expel anyone from the Auction premises for interference with Auction activities, nuisance, canvassing, soliciting, or other reasons deemed necessary by the Auctioneer. In the event of a dispute between bidders, the Auctioneer, with the consent of the Debtors, shall make the final decision to accept the final bid, to re-offer and/or re-sell the Property. If any disputes should arise following the Auction, the Auctioneer's records shall be conclusive in all respects.

(w) **Disclaimer:** Each Qualified Bidder, by submitting a bid for the Property, shall be deemed to acknowledge and represent:

- ☐ That it is bound by the Bidding Procedures contained herein;

- ☐ That it had an opportunity to inspect and examine the Property and to review all pertinent documents and information with respect to the Property prior to making its offer and that it relied solely upon its own investigation, own independent review, investigation and/or inspection of any documents and/or the Property in making its bid; and

- ☐ That it did not rely upon any written or oral statements, warranties or representatives of the Debtors or the Debtors' agents regarding the Property, or the completeness of any information provided in connection with the Property, the bidding process or the Auction.

### Objections

Objections to all relief requested in the Sale Motion and to the Sale itself must be in writing and filed and served so as to be actually received by counsel for the Debtors, Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604, Attn: Paul M. Bauch, Esq., by 4:00 p.m. (prevailing Central time) on May 18, 2012 to be submitted to the Court at the hearing scheduled on May 22, 2012 at 11:30 a.m.